HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CESARE DADDABBO, et al.,

        Plaintiffs,

    v.

COUNTRYWIDE HOME LOANS, INC.,
et al.,

        Defendants.

CASE NO. C09-1417RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion (Dkt. # 20) from five Defendants to dismiss Plaintiffs' claims.  No party requested oral argument.  For the reasons stated herein, the court GRANTS the motion in part and DENIES it in part.

## II.  BACKGROUND

Plaintiffs Cesare and Amy Daddabbo live in Ferndale, Washington.  In January 2007, Mr. Daddabbo searched for a lender to refinance their home mortgage.  He was initially referred to Defendant Pacific Mortgage Loans, Inc. ("Pacific"), a California mortgage brokerage.  ¶ 4.[1]  Pacific, in conjunction with a non-party, issued him documents in late January 2007 promising him a loan with an interest rate and closing costs that he found desirable.  ¶ 5.  Those documents included a loan application, a

---

[1] All citations using bare "¶" symbols are to Plaintiffs' complaint.  Dkt. # 2.

ORDER – 1

1    federal Truth-in-Lending Act ("TILA") disclosure, and a good faith estimate ("GFE") of

2    the terms of the loan.  *Id.*  Ms. Daddabbo was not named on any of the documents.  ¶ 4.

3            On February 2, 2007, Mr. Daddabbo received documents from Defendant

4    Decision One Mortgage Company ("Decision One"), including a new GFE.  ¶ 7.  He did

5    not receive a new TILA disclosure.  *Id.*  The new documents described a loan on less

6    favorable terms, and included no explanation of why those terms had changed from the

7    loan he was promised in late January.  *Id.*  The loan was set to close on February 8, 2007.

8            On February 8, 2007, Mr. Daddabbo received a new set of documents, including a

9    TILA disclosure.  ¶ 8.  The terms of the loan differed unfavorably in almost every respect

10   from the loan promised in late January.  *Id.*  Again Mr. Daddabbo received no

11   explanation for the changed terms.  *Id.*  He nonetheless closed the loan the following day.

12   Documents were faxed to a notary public who came to the Daddabbo home to conduct

13   the closing.  ¶ 9.  At the closing, Ms. Daddabbo signed a quitclaim deed transferring her

14   interest in the home to Mr. Daddabbo.  ¶ 10, Ex. P1.  The deed erroneously stated the

15   situs of the property as "County of Whatcom, State of California," and the notary's

16   acknowledgment indicated that the documents were signed in California.  *Id.*  The

17   recorded deed is not attached to Plaintiffs' complaint, but Defendants provided a copy of

18   the deed as it was recorded in Whatcom County on February 23, 2007.  Defs.' Req. for

19   Judicial Notice ("RJN"), Ex. B.  The recorded deed has a proper legal description of the

20   property attached to it.  *Id.*  It also has a handwritten notation from the notary correcting

21   the erroneous reference to California in her acknowledgment.  *Id.*

22           At the closing, Mr. Daddabbo received four TILA notices informing him of his

23   right to rescind the mortgage.  ¶ 14, Exs. P2-P5.  Three of them were dated February 8;

24   one was dated February 9.  *Id.*  On February 13, an employee of a non-party contacted

25   Mr. Daddabbo to have him sign a backdated TILA notice of his right to rescind.  ¶ 15.

26   Plaintiffs attached an unsigned version of the backdated TILA notice to their complaint.

27

28   ORDER – 2

1   ¶ 15, Ex. P7.  Defendants included the signed version in their request for judicial notice.

2   RJN, Ex. A.  Plaintiffs have not disputed the authenticity of the latter version.

3         At some point after the events described above, Defendant Countrywide Home

4   Loans, Inc. ("Countrywide") became the servicer of the mortgage.  Plaintiffs were

5   apparently aware of Countrywide's role as a servicer, because they sent Countrywide a

6   qualified written request in accordance with the Real Estate Settlement Procedures Act

7   ("RESPA"), 12 U.S.C. § 2601 to § 2617.  The qualified written request apparently sought

8   information on their mortgage.  12 U.S.C. § 2605(e) (authorizing qualified written

9   request and requiring response).  The qualified written request is not part of the record,

10  and Plaintiffs' complaint is silent as to when they made the request.  ¶ 16.  Countrywide's

11  response to the request stated that Wells Fargo owned the mortgage note in trust on

12  behalf of Morgan Stanley.[2]  ¶ 16.

13        Countrywide allegedly directed Defendant Recontrust Co., N.A. ("Recontrust"), to

14  foreclose on Plaintiffs mortgage on behalf of Defendant Mortgage Electronic Registration

15  Systems, Inc. ("MERS").  ¶ 17.  The complaint provides no other information on the

16  foreclosure proceedings, including when they began and whether the property has been

17  sold or a sale date has been set.

18        On October 1, 2008, Plaintiffs sent Countrywide a TILA rescission notice.  ¶ 18.

19  They contend that this notice operated to cancel the mortgage and renders the mortgage

20  note an unsecured debt.  *Id.*  Countrywide declined to cancel the mortgage.  *Id.*

21        Plaintiffs sued in Whatcom County Superior court on June 26, 2009, filing a

22  complaint raising four causes of action.  They seek a declaratory judgment canceling their

23  mortgage and rendering the mortgage note an unsecured debt.  They invoke TILA to

24  request cancellation of the mortgage as well as statutory and other damages.  They ask

25  the court to "block[] and cancel[] the foreclosure sale" on their property.  ¶ 25.  Finally,

---

26  [2] The actual names of the Wells Fargo and Morgan Stanley entities are, respectively, Wells
    Fargo & Deutche National Trust Company, and Morgan Stanley ABS Capital I Inc. Trust 2006-
27  HE6, Mortgage Pass-Through Certificates, Series 2006-HE6.

28  ORDER – 3

1   they allege that Defendants' conduct violates the Equal Credit Opportunity Act

2   ("ECOA"), 15 U.S.C. § 1691 to § 1691f, and they elect to pursue that violation as a

3   violation of the Washington Consumer Protection Act ("CPA").[3]  Plaintiffs' complaint

4   does not expressly state a RESPA claim, although a single paragraph in their complaint

5   suggests that they were dissatisfied with Countrywide's response to their qualified

6   written request.  ¶ 16.  Plaintiffs clarified their RESPA claim only in their opposition to

7   the motion to dismiss, stating that Countrywide did not timely respond to the request.

8   For purposes of this motion, the court considers Plaintiffs' belated explanation as if it

9   were included in their complaint.

10        Plaintiffs apparently assert all of their causes of action against all Defendants.  In

11   this motion to dismiss, five Defendants have banded together: Countrywide, Wells Fargo,

12   Morgan Stanley, Recontrust, and MERS.  They contend that Plaintiffs fail to state a claim

13   against them.  Defendants Pacific and Decision One have not joined in the motion.

### III.  ANALYSIS

15        The moving Defendants invoke Federal Rule of Civil Procedure 12(b)(6),

16   contending that Plaintiffs have not stated a claim against them.  The court must therefore

17   assume the truth of all the factual allegations of Plaintiffs' complaint, and credit all

18   reasonable inferences arising from their allegations.  *Sanders v. Brown*, 504 F.3d 903,

19   910 (9th Cir. 2007).  Plaintiffs must point to factual allegations that "state a claim to

20   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).

21   If they do so, their complaint survives dismissal as long as there is "any set of facts

22   consistent with the allegations in the complaint" that would entitle them to relief.  *Id.* at

23   563; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded

24

[3] Plaintiffs' complaint offers little detail about their ECOA and CPA claims, but the court notes
that the Washington Mortgage Broker Practices Act ("MBPA") makes violations of ECOA a
violation of state law.  RCW 19.146.0201(10) (making violation of ECOA by a "loan originator
or mortgage broker" unlawful).  MBPA violations are CPA violations.  RCW 19.146.100.
ECOA contains an election-of-remedies clause that requires a Plaintiff to choose between it and
comparable state law remedies.  15 U.S.C. § 1691d (e).

28   ORDER – 4

1   factual allegations, a court should assume their veracity and then determine whether they

2   plausibly give rise to an entitlement to relief."). The court typically cannot consider

3   evidence or allegations beyond the four corners of the complaint, although it may rely on

4   a document to which the complaint refers as long as the document is central to the party's

5   claims or defenses and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445,

6   448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice.

7   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

8   **A.     TILA Claims**

9       To the extent Plaintiffs invoke TILA for relief arising out of the January and

10  February 2007 transactions, their claims fail as a matter of law. TILA has a one-year

11  statute of limitations. 15 U.S.C. § 1640(e). The original refinance transactions were

12  complete by the end of February 2007; Plaintiffs sued more than two years later in June

13  2009. TILA provides them no relief for the 2007 transactions.[4]

14      TILA also, however, provides a mortgage obligor with the right to rescind his

15  mortgage more than one year after a refinancing transaction in certain circumstances. 15

16  U.S.C. § 1635(a). Ordinarily, the rescission right expires at midnight on the third

17  business day following the transaction. *Id.* It is extended, however, where the creditor

18  either fails to make required disclosures or omits material information from the

19  disclosures. *Id.* ("[T]he obligor shall have the right to rescind the transaction until

20  midnight of the third business day following the consummation of the transaction or the

21  delivery of the information and rescission forms required under this section together with

22  a statement containing the material disclosures required under this subchapter, whichever

23  is later"); *see also* 12 C.F.R. § 226.23(a)(3). Where an obligor timely requests rescission,

24  a creditor's refusal to honor the request is itself a TILA violation. 15 U.S.C. § 1635(b).

25  _____

26  [4] The court's disposition today makes it unnecessary to address Defendants' contention that they had no TILA disclosure obligations because they had no involvement in the early 2007 transactions. *See* 15 U.S.C. § 1635(a) (imposing obligation to disclose TILA rescission right on

27  "creditor"); 15 U.S.C. § 1641(d)(1) (limiting liability of mortgage assignees).

28  ORDER – 5

1    In this case, Plaintiffs claim that Countrywide failed to honor a rescission notice they sent

2    in October 2008.  ¶ 18.  They sued less than a year later, making their suit timely to the

3    extent it seeks to enforce their right to rescind.[5]

4         Although timely, Plaintiffs' claim based on their TILA right of rescission fails as a

5    matter of law because their right to rescind expired in February 2007, not three years

6    later.  As to Mr. Daddabbo, he received a TILA rescission disclosure on February 9,

7    2007, and that disclosure required him to invoke his rescission right by midnight on

8    February 13.  RJN, Ex. A.  Mr. Daddabbo does not contest that he signed this document

9    on February 9, 2007.  February 9, 2007 was a Friday, and thus the third business day

10   thereafter was February 13, 2007.  12 C.F.R. § 226.2(a)(6) (noting that for purposes of

11   rescission, business days exclude only Sundays and certain public holidays).  Thus, the

12   notice properly informed him of his rescission rights, and he failed to exercise those

13   rights within the three-business-day limitation period.

14        Plaintiffs also assert that Defendants violated TILA by failing to give Ms.

15   Daddabbo notice of her right to rescind.  Although TILA typically limits rescission

16   liability for assignees to liability arising out of facial errors in disclosure forms, 15 U.S.C.

17   § 1641(a) & (e), it permits an obligor to pursue a rescission claim against any assignee.

18   15 U.S.C. § 1641(c).  Thus, if the original creditors had an obligation to give Ms.

19   Daddabbo notice of her right to rescind, she may invoke her right to rescind.

20   226.23(a)(4) ("When more than one consumer in a transaction has the right to rescind, the

21   exercise of the right by one consumer shall be effective as to all consumers.").

22        Plaintiffs' contention that Ms. Daddabbo has a rescission right depends on their

23   claim that she did not validly quitclaim her interest in their home to her husband in

24   conjunction with the refinancing.  The court thus turns to that claim.

25

---

26   [5] The court's disposition today makes it unnecessary to address Defendants contention that
     Plaintiffs could not invoke their rescission right because they could not tender back the proceeds
27   of the refinance transaction.

28   ORDER – 6

1        There is no dispute that prior to Ms. Daddabbo's execution of the quitclaim deed,

2   the real estate on which she and her husband lived was their community property.

3   Typically, both spouses must execute a conveyance of real property that serves as a

4   primary residence:

5           The homestead of a spouse or domestic partner cannot be conveyed or
            encumbered unless the instrument by which it is conveyed or encumbered
6           is executed and acknowledged by both spouses or both domestic partners,
            except that either spouse or both or either domestic partner or both jointly
7           may make and execute powers of attorney for the conveyance or
8           encumbrance of the homestead.

9   RCW 6.13.060.  A conveyance made by only one spouse is nonetheless valid if the

10  spouse makes the conveyance voluntarily and then accepts the benefits of the

11  conveyance.  *Snohomish County v. Hawkins*, 89 P.3d 713, 715-16 (Wash. Ct. App. 2004)

12  ("A party ratifies an otherwise voidable contract if, after discovering facts that warrant

13  rescission, she remains silent or continues to accept the contract's benefits.").  In this

14  case, Plaintiffs' allegations establish that Ms. Daddabbo executed the quitclaim deed

15  voluntarily so that her husband could execute the refinancing transaction.  She accepted

16  the benefits of that transaction (the refinancing), and only now seeks to invalidate the

17  quitclaim deed.  She cannot do so.

18        Plaintiffs' alternative basis for invalidating the deed is that it erroneously stated

19  that the subject real estate was in Whatcom County, California, with a similar error in the

20  notary's acknowledgement of the quitclaim deed.  There is no dispute that the deed as

21  recorded attached a correct legal description of the property.  RJN, Ex. B.  The error in

22  the notary's acknowledgment was corrected by hand and initialed by the notary.[6]  The

23  only "error" remaining on the deed as it was recorded was the statement that the subject

24  property was "in the County of Whatcom, State of California."  *Id.*  A person reviewing

25  _____

26  [6] Plaintiffs contend that the notary corrected the acknowledgment only after Ms. Daddabbo
    signed it.  Even if the court accepts the truth of this allegation, Plaintiffs provide no authority for
    the proposition that an accurate post-signature modification to a notary's acknowledgment
27  somehow invalidates that acknowledgment.

28  ORDER – 7

1    the recorded deed would know immediately from the attached (and correct) legal

2    description that the error was immaterial.  Even if the court were to find that the error was

3    material, such errors do not invalidate a deed where it can be readily ascertained what

4    property the deed intended to transfer.  *E.g.*, *Thompson v. Stack*, 150 P.2d 387, 390-91

5    (Wash. 1944); *Bacon v. Gardner*, 229 P.2d 523, 528 (Wash. 1951).  In this case, the court

6    finds no basis to deem the deed invalid merely because of the obviously erroneous

7    reference to California property.

8         Plaintiffs' also argue that the deed is invalid because the legal description was not

9    attached when Ms. Daddabbo signed it, even though there is no dispute that the legal

10   description is accurate.  The deed Ms. Daddabbo signed explained that the legal

11   description would be appended later.  RJN, Ex. B ("COMPLETE LEGAL

12   DESCRIPTION TO BE PROVIDED").  Plaintiffs present no authority for the notion that

13   the post-signature attachment of an accurate legal description to a deed somehow

14   invalidates it.  The sole case Plaintiffs cite, *Berg v. Ting*, 886 P.2d 564 (Wash. 1995), is

15   readily distinguishable.  The *Berg* court merely held that a deed transferring an easement

16   was invalid where the deed contained no legal description, and referred to a non-existent

17   document as the basis for the legal description.  *Id.* at 567-69.  In this case, by contrast,

18   the document was not non-existent, it was merely not physically attached to the deed at

19   the time Ms. Daddabbo signed it.

20        For all of these reasons, the court concludes that neither Mr. Daddabbo nor Ms.

21   Daddabbo could invoke TILA to rescind the mortgage in October 2008.  For that reason,

22   none of the Defendants violated TILA by declining to honor Plaintiffs' late rescission

23   request.  Plaintiffs therefore have no timely TILA claims against the moving Defendants.

24   **B.      CPA and ECOA claims**

25        Plaintiffs point to only two CPA violations in their complaint.  One is a violation

26   of ECOA; the other is Defendants' failure to honor Plaintiffs' rescission notice.  Plaintiffs

27   claim that someone raised the interest rate on the loan between the January and February

28   ORDER – 8

1   2007 loan documents, thereby violating ECOA.  There is no allegation that any of the

2   moving Defendants were responsible for this act.  Plaintiffs make no effort to offer

3   authority establishing that an ECOA violation made in mortgage process becomes the

4   responsibility of a subsequent purchaser of the mortgage.  The court is aware of no such

5   authority.  Any CPA claim based on failure to honor Plaintiffs' TILA rescission notices

6   fails for reasons mentioned in subpart A above.  The court therefore dismisses Plaintiffs'

7   CPA claims.[7]

8   **C.    RESPA claims**

9        The only RESPA violation that Plaintiffs attribute to the moving Defendants is

10  that Countrywide violated RESPA by not timely responding to their qualified written

11  request.  12 U.S.C. § 2605(e)(2) (establishing timely for response to a qualified written

12  request).  This allegation appears nowhere in the complaint, it appears only in Plaintiffs'

13  opposition to their motion to dismiss.  The complaint does not state when Plaintiffs made

14  their qualified written request, nor when Countrywide responded.  No one has provided a

15  copy of the request or Countrywide's response.

16       Countrywide contends that a claim based on the qualified written request is

17  untimely.  Countrywide is mistaken.  RESPA has a three-year statute of limitations for

18  violations of 12 U.S.C. § 2605.  12 U.S.C. § 2614.  At the soonest, Plaintiffs made their

19  qualified written request in early 2007, making their claim against Countrywide timely.

20       In all other respects, however, Plaintiffs have failed to state a RESPA claim

21  against the moving Defendants.  They make no effort to explain how any other Defendant

22  violated RESPA.  The court therefore concludes that Plaintiffs' RESPA claim survives

23  dismissal solely to the extent that it states a claim against Countrywide based on its

24  failure to timely respond to Plaintiffs' qualified written request.

25

26  ─────────────
[7] Plaintiffs' opposition to the motion to dismiss asserts that "this loan is rife with CPA violations."  Pltfs.' Opp'n at 13.  They make no effort to describe any violation except those the
27  court has noted.

28  ORDER – 9

1    **D.      Declaratory Judgment Preventing the Foreclosure Sale.**

2           On the record before the court, there is no basis to prevent any foreclosure sale of

3    Plaintiffs' property.  The court notes that Plaintiffs provide virtually no information about

4    the foreclosure sale.  The court is aware only that Recontrust has initiated a foreclosure

5    action on behalf of MERS.  ¶ 17.  Plaintiffs' sole basis for blocking the foreclosure (other

6    than the bases rejected above) is their contention that MERS has no beneficial interest in

7    the note that the deed of trust secures, and that Recontrust therefore has no power as

8    MERS's designee to initiate a foreclosure action.  This assertion is baffling.  The deed of

9    trust, of which the court takes judicial notice, explicitly names MERS as a beneficiary.

10   RJN, Ex. C. (Definitions ¶ (E)).  The deed of trust grants MERS not only legal title to the

11   interests created in the trust, but the authorization of the lender and any of its successors

12   to take any action to protect those interest, including the "right to foreclose and sell the

13   Property."  RJN, Ex. C.  Plaintiffs attempt to counter this unambiguous grant of power by

14   introducing a prospectus for the trust that holds the deed of trust.  Plaintiffs do not

15   explain how the court can properly consider this document on a motion to dismiss.  The

16   court considers it nonetheless, because nothing in it remotely supports Plaintiffs'

17   assertion that MERS somehow has been stripped of the power that the deed of trust

18   grants.  Plaintiffs have raised no valid basis to stop any foreclosure sale.

19                              **IV.  CONCLUSION**

20          For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 20)

21   in part and DENIES it in part.  The court dismisses all claims against Wells Fargo,

22   Morgan Stanley, Recontrust, and MERS.  The clerk shall terminate each of these

23   Defendants as parties to this action.  The court dismisses all claims against Countrywide

24   except a RESPA claim based on its alleged failure to timely respond to Plaintiffs'

25   qualified written request.

26          Plaintiffs request leave to file an amended complaint.  They do not attempt to

27   explain, however, how they would amend their complaint to state valid claims against the

28   ORDER – 10

1  moving Defendants.  Nothing in the record before the court suggests that Plaintiffs have a

2  valid basis to amend their complaint.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

3  1995) ("[A] district court does not abuse its discretion in denying a motion to amend

4  where the movant . . . provides no satisfactory explanation for his failure to fully develop

5  his contentions originally.").  On this record, the court can only conclude that any

6  amendment would be futile.[8]  *Mt. Hood Polaris, Inc. v. Martino (In re Gardner)*, 563

7  F.3d 981,990 (9th Cir. 2009) ("A district court does not err in denying leave to amend

8  where the amendment would be futile.").

9         DATED this 20th day of May, 2010.

10

11

12                                         Richard A Jones
                                         _____
13                                         The Honorable Richard A. Jones
                                         United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

_____

26  [8] Plaintiffs' counsel does not help his clients' cause by comparing Defendants to Auschwitz
    guards, despite his disclaimer that he does so only for "vivid Socratic purposes."  Pltfs.' Opp'n at
27  12.  Such invective is beneath the standards of advocacy this court expects from counsel.

28  ORDER – 11